<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARCUS NEPOMUCENO, | : | **Hon. William J. Martini** |
| Petitioner, | : | |
| | : | Civil No. 11-6825 (WJM) |
| v. | : | |
| ERIC H. HOLDER, JR., et al., | : | <u>OPINION</u> |
| Respondents. | : | |

**APPEARANCES**:

    MARCUS NEPOMUCENO, A 200-766-895
    Essex County Correctional Facility
    354 Doremus Avenue
    Newark, New Jersey 07105
    Petitioner <u>Pro</u> <u>Se</u>

    PAMELA R. PERRON, Assistant United States Attorney
    UNITED STATES ATTORNEY
    970 Broad Street, Room 700
    Newark, New Jersey  07102
    Attorneys for Respondents

<u>MARTINI</u>, <u>District Judge</u>:

    Marcus Nepomuceno, confined at Essex County Correctional Facility in Newark, New Jersey, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his pre-removal-period detention in the custody of respondents and the Department of Homeland Security ("DHS").  Respondents filed an Answer, a declaration, and several exhibits, and Petitioner filed two replies.  Because Petitioner received two bond hearings before an Immigration Judge and for the reasons expressed in this Opinion, this Court will dismiss the Petition.

## I.  BACKGROUND

Marcus Nepomuceno, a native and citizen of Brazil, challenges his detention in the custody of DHS at Essex County Correctional Facility.  Nepomuceno entered the United States sometime in 2003 without being admitted by an immigration officer.  On March 4, 2011, local officials arrested Petitioner for domestic violence.[1]  While he was detained on those charges, immigration officials interviewed him and learned that he had not been admitted to the United States.  On April 12, 2011, an immigration officer arrested Petitioner and served him with a notice to appear for removal, charging him with inadmissibility pursuant to INA, § 212(a)(6)(A)(i) in that he is an alien present in the United States without being admitted or paroled.  By notice of custody determination served on the same date, DHS notified Petitioner that it had determined that he would be detained pending the outcome of removal proceedings and notified him that he could request a review of the determination by an Immigration Judge, which Petitioner did.  After conducting a bond release hearing, on April 26, 2011, Immigration Judge Margaret R. Reichenberg denied release on bond based on her finding that Petitioner was a danger to the community.  (Dkt. 91- at 4.)  On or about October 6, 2011, Petitioner filed a motion asking the Immigration Judge for a bond re-hearing.  (Dkt. 9-1 at 30.)  On October 18, 2011, Immigration Judge Reichenberg conducted a bond re-hearing, as well as a hearing on Petitioner's removal.  (Dkt. 9-1 at 5.)  Judge Reichenberg again denied release on bond (Dkt. 9-1 at 9) and ordered his removal to Brazil based on the charge in the notice to appear (Dkt. 9-1 at 37.)  Judge Reichenberg issued a written opinion on the bond re-hearing in which she found:

---

[1] The domestic violence criminal charges were dismissed on September 7, 2011.  (Dkt. 9 at 2.)

> In the instant case, the respondent has failed to show that he poses no threat of danger to the community. The respondent had serious domestic violence related offenses pending against him based upon hitting his wife with a car. While his wife sought to downplay the seriousness of the offense in her affidavit, the Court concluded that the crime was serious and violent. Considering the serious nature and recency of the criminal charge pending against the respondent, the Court concluded that the respondent had failed to show that he poses no threat of danger to the community and denied his request to redetermine his custody status on that basis.
>
>     \*            \*            \*
>
> The Court understands that the respondent was arguing that the charges based on his arrest for domestic violence against his wife had been dismissed . . . . Assuming that the pending charges against the respondent were dismissed, the Court concludes that the determination that he be held in custody without bond remains correct because the respondent presents a very significant risk of flight. The respondent has minimal ties to the United States. His marriage appears to be volatile as the relationship between he and his wife gave rise to the domestic violence charges against him. He has no relief from removal. Therefore, the Court gives little weight to a claim that his marriage provides a stable factor which would mitigate against his risk of flight. For these reasons, the [Court] concludes that the respondent should be detained in custody without a bond.

(Dkt. 9-1 at 6-7.)

Petitioner filed the § 2241 Petition presently before this Court on November 18, 2011.[2] In the Petition, Petitioner argues that his prolonged detention is not authorized by Congress and violates due process under Diop v. ICE/Homeland Sec., 656 F.3d 221 (3d Cir. 2011). He seeks a Writ of Habeas Corpus directing respondents to either release him from custody or provide a hearing. This Court ordered service and an answer. On January 11, 2012, respondents filed an Answer, declaration and exhibits, arguing that this Court should dismiss the Petition. Petitioner filed two replies, arguing that his prolonged detention violates Diop.

---

[2] The record does not reveal if Petitioner appealed the order of removal to the Board of Immigration Appeals.

## II.  DISCUSSION

A.  Jurisdiction

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied:  (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989).  This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of DHS at the time he filed his Petition, see Spencer v. Kemna, 523 U.S. 1, 7 (1998), and he asserts that his mandatory detention is not statutorily authorized.  See Zadvydas v. Davis, 533 U.S. 678, 699 (2001); Diop v. ICE/Homeland Security, 656 F. 3d 221, 226 (3d Cir. 2011).

B.  Exhaustion

The government argues that this Court should dismiss the Petition because Petitioner failed to appeal the Immigration Judge's order denying bond to the Board of Immigration Appeals.  Although 28 U.S.C. § 2241 contains no exhaustion requirement, "[o]rdinarily, federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241."  Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998); see also Woodall v. Federal Bureau of Prisons, 432 F. 3d 235, 239 (3d Cir. 2005).

In this case, after conducting a bond hearing and a re-hearing, the Immigration Judge denied bond by orders entered April 26, 2011, and October 18, 2011.  (Dkt. 9-1 at 4, 9.) Respondents correctly state that immigration regulations provide that the alien or the

immigration service may appeal the bond and custody determination of an immigration judge to the Board of Immigration Appeals.  See 28 C.F.R. § 236.1(d)(3)(i).  Nothing submitted to this Court indicates that Petitioner appealed either bond order to the Board of Immigration Appeals and, if any appeal was filed, that the BIA has issued a decision.  Because Petitioner did not exhaust administrative remedies before pursuing relief under § 2241, and he has not shown that exhaustion would be futile or should otherwise be excused, this Court will dismiss the Petition for failure to exhaust available administrative remedies.  See Leonardo v. Crawford, 646 F.3d 1157 (9th Cir. 2011).

C.  Relevant Statutes

Petitioner also argues that his pre-removal period detention is not statutorily authorized and that his prolonged detention without a bond hearing is unreasonable under Diop.  The statutory authority to detain an alien depends where the alien is in the removal process.  Section 1226 governs the pre-removal-period detention of an alien.[3]  Section 1226 provides:

> (a) Arrest, detention, and release
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) of this section and pending such decision, the Attorney General –
>
>   (1) may continue to detain the arrested alien; and
>
>   (2) may release the alien on –
>
>     (A) bond of at least $1,500 . . ; or

---

[3] Section 1231(a)(2) mandates detention during the removal period established in § 1231(a)(1)(B); and § 1231(a)(6) provides the Attorney General with discretionary authority to detain aliens beyond the removal period, or release them under supervision.

5

   (B) conditional parole; but

 (3) may not provide the alien with work authorization . . . unless the alien is lawfully admitted for permanent residence or otherwise would . . . be provided such authorization.

(b) Revocation of bond or parole

The Attorney General at any time may revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien under the original warrant, and detain the alien.

(c) Detention of criminal aliens

(1) Custody

The Attorney General shall take into custody any alien who -

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

(2) Release

The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to

> provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226.

Section 1226(a) authorizes the arrest, detention and release of aliens on bond pending a decision on whether the alien is to be removed from the United States, except as provided in § 1226(c). See 8 U.S.C. § 1226(a). Section § 1226(c), an exception to § 1226(a), mandates detention of specified criminal aliens during removal proceedings, provided detention does not continue for a prolonged period of time. See 8 U.S.C. § 1226(c); Diop v. ICE/Homeland Sec., 656 F. 3d at 232 ("At a certain point, continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community").

Section 1231(a)(2) requires the Attorney General to detain aliens during the removal period. See 8 U.S.C. § 1231(a)(2) ("During the removal period, the Attorney General shall detain the alien"). Under § 1231(a)(1)(B), the removal period begins at the latest of several events. Specifically,

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.

>   (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
>   (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

D.  Statutory Authority for Petitioner's Detention

In this case, Petitioner challenges his pre-removal period detention, arguing that his prolonged detention without due process violates Diop. However, the record shows that Petitioner's pre-removal-period detention is (or was) governed by § 1226(a), which allows the Immigration Judge to release an alien on bond where the Immigration Judge finds that the alien is neither a flight risk nor a danger to the community. Because Petitioner is not mandatorily detained pursuant to the exception set forth in § 1226(c), and because the Immigration Judge conducted two bond hearings in accordance with § 1226(a), finding that Petitioner is either a flight risk or a danger to the community, the holding of Diop v. ICE/Homeland Sec., 656 F. 3d at 232, does not apply. Under these circumstances, this Court will dismiss the Petition.[4]

---

[4] The dismissal is without prejudice to the filing of a new § 2241 petition in the event that Petitioner has been detained for more than six months after entry of a final order of removal and his removal to Brazil is not reasonably foreseeable.  See Zadvydas v. Davis, 533 U.S. 678, 701 (2001) (To guide habeas courts, the Supreme Court recognized six months as a "presumptively reasonable period" of post-removal-period detention under § 1231(a)(6). "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing").

### III.  CONCLUSION

For the reasons set forth above, the Court will dismiss the Petition.

s/William J. Martini

**WILLIAM J. MARTINI, U.S.D.J.**

DATED: March 5, 2012